# FOR PUBLICATION



**FILED**

Aug 20 2013, 5:44 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GREGORY JOHNSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-CR-28 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable William Nelson, Judge
Cause No. 49F07-1205-CM-36170

**August 20, 2013**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Gregory Johnson appeals his conviction for Class A misdemeanor possession of marijuana. We affirm.

**Issue**

The sole issue is whether the trial court properly admitted evidence recovered as a result of a traffic stop of Johnson's vehicle.

**Facts**

On May 29, 2012, Officer Keith Minch of the Indianapolis Metropolitan Police Department pulled over a Dodge Caravan minivan driven by Johnson because of Officer Minch's belief that the rear window of the vehicle was too darkly tinted, so that he "could not see through it clearly enough to identify the occupants inside and describe them to the point that the law allows." Tr. p. 7. After receiving identification from Johnson, Officer Minch discovered that Johnson's driver's license was suspended. Officer Minch then placed Johnson under arrest. During a pat down search incident to arrest, Officer Minch found several bags of marijuana inside a pocket of Johnson's pants.

The State charged Johnson with Class A misdemeanor dealing in marijuana and Class A misdemeanor possession of marijuana. Johnson filed a motion to suppress the marijuana, arguing that the initial stop of his vehicle was illegal because his windows were not illegally tinted. The trial court did not hold a separate motion to suppress hearing but considered it during Johnson's bench trial, which was held on December 17, 2012. During that trial, Johnson presented uncontradicted evidence that the tint on the

minivan was factory standard for Dodge Caravans for that year and of that type.[1]  The trial court refused to suppress the marijuana; it acquitted Johnson of dealing in marijuana and convicted him of possession of marijuana.  Johnson now appeals.

**Analysis**

The trial court here essentially held a hearing on Johnson's motion to suppress in conjunction with his trial and seemed to rule on the matter as a question of admissibility of evidence.  We review a ruling concerning the admissibility of evidence for an abuse of discretion.  Kelley v. State, 825 N.E.2d 420, 424 (Ind. Ct. App. 2005).  "An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court."  Id.  We cannot reweigh the evidence or judge witness credibility, and must consider conflicting evidence in a light most favorable to the trial court's ruling.  Lindsey v. State, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), trans. denied.  It also is well-settled that when reviewing the constitutionality of a search or seizure, we must also examine "any uncontested evidence favorable to the appellant."  Fair v. State, 627 N.E.2d 427, 434 (Ind. 1993).[2]  "Although a trial court's determination of historical

---

[1] The trial court sustained the State's objection to a document from the dealer who sold the minivan indicating that the window tint was factory standard, but Johnson testified to the same effect regarding the window tint without objection.

[2] Recently, in Walker v. State, 986 N.E.2d 328, 333 (Ind. Ct. App. 2013), another panel of this court stated that if a defendant challenges the constitutionality of a search or seizure via objection to the admissibility of evidence at trial and appeal from a resulting conviction, and not through a separate motion to suppress hearing and interlocutory appeal, then on appeal "we may not consider the uncontested evidence favorable to the defendant."  We disagree with this statement.  Fair and Lindsey, for example, both were appeals after final conviction, not interlocutory appeals from denial of a motion to suppress.  See also Lance v. State, 425 N.E.2d 77, 78 (Ind. 1981) (applying "uncontested adverse evidence" standard to search and seizure question in appeal after trial and final conviction).

3

facts is entitled to deferential review, we employ a _de novo_ standard when reviewing the trial court's ultimate determinations of reasonable suspicion and probable cause." Lindsey, 916 N.E.2d at 238. In other words, when a trial court has admitted evidence alleged to have been discovered as the result of an illegal search or seizure, we generally will assume the trial court accepted the evidence presented by the State and will not reweigh that evidence, but we owe no deference as to whether that evidence established the constitutionality of a search or seizure.

Under the Fourth Amendment to the United States Constitution, a seizure in the form of a traffic stop is permissible if an officer has at least reasonable suspicion that a traffic law, or other law, has been violated. Sanders v. State, 989 N.E.2d 332, 335 (Ind. 2013). Whether reasonable suspicion for a seizure existed requires examination of the totality of the circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. L.W. v. State, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010). The reasonable suspicion requirement is met where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe illegal activity has occurred or is about to occur. Id. Reasonable suspicion cannot be based only upon an officer's general "hunches" or unparticularized suspicions. Id.

Recently, in <u>Sanders</u>, our supreme court highlighted the deference to be given to police officers who have pulled over a vehicle for a perceived violation of Indiana Code Section 9-19-19-4, the Indiana Window Tint Statute.[3] The statute provides in part:

> A person may not drive a motor vehicle that has a:
>
> (1) windshield;
>
> (2) side wing;
>
> (3) side window that is part of a front door; or
>
> (4) rear back window;
>
> that is covered by or treated with sunscreening material or is tinted to the extent or manufactured in a way that the occupants of the vehicle cannot be easily identified or recognized through that window from outside the vehicle. However, it is a defense if the sunscreening material applied to those windows has a total solar reflectance of visible light of not more than twenty-five percent (25%) as measured on the nonfilm side and light transmittance of at least thirty percent (30%) in the visible light range.

Ind. Code § 9-19-19-4(c). In <u>Sanders</u>, Officer Minch pulled over a vehicle with tinted windows when he was unable to clearly recognize or identify the occupants, but later testing revealed that the windows were not in fact in violation of the Window Tint Statute because they permitted a light transmittance of 38%. The court held that although this testing would absolve the driver of liability for violating the Window Tint Statute, it did not make the stop illegal, in light of the officer's testimony that established reasonable suspicion to make the stop. <u>Sanders</u>, 989 N.E.2d at 335-36. It also stated, "Although the

---

[3] Curiously, Officer Minch also pulled over the defendant in <u>Sanders</u>.

5

officer was ultimately mistaken in his belief that a violation occurred, the traffic stop was based upon a good faith, reasonable belief that a statutory infraction had occurred and thus we are unable to say that the traffic stop was not lawful." Id. at 336.

Even if we were to assume that the tinting on the windows of the minivan Johnson was driving was legal,[4] that does not negate Officer Minch's testified-to observation that, at the time of the stop, he could not clearly identify the vehicle's occupants. Likewise, we are precluded from accepting Johnson's invitation to consider photographic evidence presented during trial that he argues shows the tinting on his rear window was not excessive and, in fact, was no darker than other similar Dodge Caravans. To do so at the expense of Officer Minch's testimony of what he observed at the time of the traffic stop would constitute reweighing the evidence, which we cannot do. Viewing the evidence in a light most favorable to the trial court's ruling, even if Officer Minch was mistaken about whether the rear window of the minivan violated the Window Tint Statute, his testimony establishes that it was a good faith mistake and that there was reasonable suspicion to make the stop. See id.

The defendant in Sanders did not make an argument under the Indiana Constitution. Id. at 334 n.2. Johnson does make such an argument. The legality of a search or seizure under Article 1, Section 11 of the Indiana Constitution turns on the reasonableness of the police conduct under the totality of the circumstances. Lacey v.

---

[4] The State has never disputed Johnson's assertion that the windows on the minivan were factory standard. We will assume for the sake of argument that Dodge did not mass-produce minivans with illegally dark window tinting.

6

State, 946 N.E.2d 548, 550 (Ind. 2011). Although there may be other relevant considerations depending on the circumstances, the reasonableness of a search or seizure turns on a balancing of: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." Litchfield v. State, 824 N.E.2d 356, 361 (Ind. 2005).

We will admit that the degree of concern, suspicion, or knowledge that Johnson was committing a traffic violation was not overwhelming. Unlike running a red light or turning without signaling or speeding as measured by a radar gun, there is much subjectivity that goes into deciding whether a window of a moving car is too dark under the Window Tint Statute. And, again, the State does not dispute that the minivan's windows were factory standard. Still, the degree of suspicion was not non-existent. We also will acknowledge that the State's interest in enforcing the Window Tint Statute is not an overwhelmingly pressing public safety concern. Again, the red light, failure to signal, and speeding examples are all more inherently dangerous than having overly-tinted windows. Nonetheless, there are legitimate law enforcement and safety interests in prohibiting the operation of vehicles with excessive window tinting, and police officers are entitled to enforce the statute.

Johnson concedes that the degree of intrusion caused by the traffic stop was "not excessively high." Appellant's Br. p. 12. There is no argument or evidence that Officer Minch unnecessarily extended the length of the traffic stop by conducting a "fishing

7

expedition." Instead, Officer Minch only asked Johnson for his identification, which revealed that Johnson's license was suspended and led to his arrest and the discovery of the marijuana. Officers who stop a vehicle for a suspected violation of the Window Tint Statute are permitted to briefly detain a motorist to, among other things, request a driver's license and vehicle identification and conduct a license plate check. See Herbert v. State, 891 N.E.2d 67, 70 (Ind. Ct. App. 2008) (quoting State v. Quirk, 842 N.E.2d 334, 340 (Ind. 2006)), trans. denied. Even if the degree of suspicion and needs of law enforcement were not overwhelming in this case, the relative lack of intrusiveness of the traffic stop and Officer Minch's behavior lead us to conclude that his conduct was reasonable under the totality of the circumstances and, therefore, did not violate the Indiana Constitution.

Johnson also makes a statutory argument, which is essentially that the General Assembly could not have intended to permit police officers unbridled discretion to pull over vehicles with legal window tinting on the basis of their own subjective assessment that the tinting is too dark, or that Officer Minch's testimony that he could not adequately "identify . . . and describe" the occupants of the minivan did not meet the requirements of the Window Tint Statute. Tr. p. 7. We observe, however, that Officer Minch gave very similar testimony in Sanders, which our supreme court deemed adequate to establish reasonable suspicion to pull over a vehicle.[5] We also assume that, when drafting and subsequently recodifying the Window Tint Statute, the General Assembly was well aware

---

[5] Officer Minch testified in Sanders that "he could not 'clearly recognize or identify the occupant inside.'" Sanders, 989 N.E.2d at 335.

8

of the constitutional principle that police officers are permitted to pull over vehicles upon reasonable suspicion that a traffic law has been violated, and furthermore that "pretextual" stops of vehicles for minor traffic violations do not run afoul of either the United States or Indiana Constitutions. See Whren v. United States, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774 (1996); Mitchell v. State, 745 N.E.2d 775, 787 (Ind. 2001). If the General Assembly believes it would be wise to re-write the Window Tint Statute in such a way as to limit police officer authority to pull over vehicles for suspected violations of that law, it could do so. Additionally, the primary check upon potential abuse of the Window Tint Statute as a pretext to conduct traffic stops must lie with trial courts, which are in a position to judge the credibility of police officer testimony regarding the ability to see through a particular vehicle's window tinting.

**Conclusion**

Officer Minch's stop of Johnson's vehicle did not violate the United States Constitution, the Indiana Constitution, or the Window Tint Statute. We affirm the admission of the marijuana into evidence and his conviction for possession of marijuana.

Affirmed.

CRONE, J., and PYLE, J., concur.